DA 10-0231

FILED

May 24 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 110

TERRY BLANTON, individually and on
behalf of himself and all others
similarly situated,

        Plaintiffs, Appellees, and Cross-Appellants,

    v.

THE DEPARTMENT OF PUBLIC HEALTH
AND HUMAN SERVICES, a department
of the State of Montana,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 06-37
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Randy J. Cox (argued), Dean A. Stensland (argued); Boone Karlberg,
P.C.; Missoula, Montana

            Steve Bullock, Montana Attorney General; Katherine J. Orr, Assistant
Attorney General, Agency Legal Services Bureau; Helena, Montana

        For Appellees and Cross-Appellants:

            Alan J. Lerner (argued), Linda C. Semrow; Lerner Law Firm; Kalispell,
Montana

            James A. Manley; Manley Law Firm; Polson, Montana

        Argued and Submitted:    March 2, 2011
                    Decided:    May 24, 2011

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      The Department of Public Health and Human Services (the "Department") appeals from the judgment of the Lake County District Court in favor of Terry Blanton (Blanton) and the approximately 2,500 class members (the "Class").  Blanton and the Class cross-appeal.  We consider the following issues on appeal:

¶2      *1. Whether the District Court correctly determined the retroactive applicability of* Ark. Dept. of Health & Human Servs. v. Ahlborn, *547 U.S. 268, 126 S. Ct. 1752 (2006).*

¶3      *2. Whether the District Court's order requiring the Department to compile data on each class member's claim constituted an abuse of discretion.*

¶4      *3.  Whether the District Court erred in determining that interest should be assessed from the date of collection on any amounts improperly collected by the Department.*

¶5      *4. Whether the District Court erred in determining that a Medicaid recipient's insurer is not a "third party" as that term is used in state and federal Medicaid reimbursement laws.*

¶6      On cross-appeal, we consider whether the District Court erred by failing to apply the common law "made whole" doctrine.

### FACTUAL AND PROCEDURAL BACKGROUND

¶7      This suit concerns the Department's collection on liens filed against other sources of financial support available to Medicaid recipients for the same or similar injury.  State and federal laws require Medicaid (administered by the Department) to seek reimbursement for medical assistance from all third parties liable for the Medicaid

2

recipient's medical expenses, in keeping with Medicaid's function as the payer of last resort. Under § 53-2-612, MCA, the Department holds a lien against payments made to Medicaid assistance recipients, so the Medicaid program can recoup costs paid on behalf of aid recipients when another source is legally liable for the same injury or condition.

¶8     Terry Blanton filed suit on February 14, 2006, individually and on behalf of a class of similarly situated plaintiffs who received Medicaid assistance and were subject to a Medicaid lien pursuant to § 53-2-612, MCA. The suit alleged that the Department had collected a greater amount than it was entitled from the plaintiffs' recoveries from other sources. Individually and on behalf of the Class, Blanton sought declaratory and injunctive relief, seeking a ruling that the Department's liens were invalid under federal Medicaid law and the Montana and U.S. Constitutions. Blanton claimed the Department was not entitled to reimbursement until he (or any given class member) had been "made whole." Blanton asked the court to order the Department to report on all subrogation recoveries, give class members an opportunity to contest these reports, and return to the Class monies improperly collected.

¶9     Soon after plaintiffs' complaint was filed, the United States Supreme Court held in *Ahlborn* that an Arkansas statute nearly identical to the Montana Medicaid lien statute violated federal Medicaid law, because it authorized the State to seek reimbursement from *all* settlement proceeds, rather than only those settlement proceeds representing compensation for medical expenses.

¶10    The Supreme Court explained that 42 U.S.C. § 1396p(a), the Medicaid "anti-lien provision," generally prohibits liens against the property of aid recipients, and "the

3

exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care." *Ahlborn*, 547 U.S. at 284-85, 126 S. Ct. at 1763. The Court summarized, "Arkansas' statute finds no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws." *Id.* at 280, 126 S. Ct. at 1760. Like its Arkansas counterpart, § 53-2-612, MCA (2005), provided that Medicaid liens attached to *all* money paid by a third party to the extent the Department had paid medical assistance for the same personal injury. Thus, the standard practice of agencies administering Medicaid in Montana and Arkansas was to place a lien on third party payments to the full extent Medicaid had expended funds on behalf of the recipient, even if that amount exceeded the portion of the recipient's settlement or judgment attributable to medical costs.

¶11 This was a common interpretation nationwide of the federal Medicaid statute, until *Ahlborn*. The U.S. Supreme Court's decision meant the Department had impermissibly collected settlement proceeds attributable to non-medical costs in thousands of instances in the past. For example, were an injured person to have received $60,000 worth of Medicaid assistance for an injury that later gave rise to a $20,000 settlement between the recipient and a third party, if half of the settlement amount was attributable to medical costs and half to damages for pain and suffering, the Department would be limited by the federal anti-lien provision to reimbursement from the $10,000 payment for medical expenses. Previously, however, the Department asserted liens to the full extent of its assistance paid, and against all settlement proceeds received by the recipient—in the

4

above example, against the full $20,000. The Montana Legislature amended § 53-2-612, MCA, in 2009, to conform to *Ahlborn*'s holding.

¶12 In response to *Ahlborn*, the Department and the Class filed motions for summary judgment and/or partial summary judgment addressing the effect the decision should have on this case. Both parties agreed *Ahlborn* would apply retroactively to some extent, given the clear requirement under federal law that rules of law must be applied evenly to all cases open and pending on direct review. *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517 (1993); *Danforth v. Minnesota*, 552 U.S. 264, 266, 128 S. Ct. 1029, 1032 (2008). The parties strongly disagreed on the interpretation of this mandate as applied to the case, and on February 20, 2009, the court heard oral argument. Plaintiffs contended that *Ahlborn* should be applied retroactively to all members of the Class. The Department maintained that the holding should only apply to those members whose liens were still in place as of September 7, 2007, when the class was certified, or alternatively from May 1, 2006, the date of the *Ahlborn* decision. The District Court ruled that *Ahlborn* would apply retroactively, but "at this time," only to those members of the class with "uncontested, non-settled cases which were not final as of February 14, 1998."

¶13 The order encompassed two determinations made by the court: first, that *Ahlborn* would apply retroactively only to cases where the Medicaid recipient had not contested or settled the lien. The court emphasized the distinction between contested and uncontested cases in determining whether a case is "open and pending." The court held that if the Department could show that any class members disputed their claim or lien, and that such

5

dispute resulted in "an informed and represented negotiation of terms or a court order," then *Ahlborn* would not apply retroactively. In this determination, the court found *Paopao v. Dept. of Soc. and Health Servs.*, 185 P.3d 640 (Wash. App. 2008), instructive. *Id.* at 644-45 (denying retroactive application of *Ahlborn* to a Medicaid recipient who had negotiated a resolution of her Medicaid lien six months prior to *Ahlborn*, on the ground that her case was "no longer pending," as "[s]ettlement agreements between private parties are viewed with finality.").

¶14 Second, the ruling incorporated the court's conclusion that the appropriate limitations period to apply to class members' claims was the eight-year period for written instruments in § 27-2-202(1), MCA. Thus, measuring back eight years from the date of the complaint, the court held that *Ahlborn* would apply to claims dating from February 14, 1998, to the present. The written instrument the court found applicable was the assignment of all rights to "monetary and medical support" to which the applicant for Medicaid assistance may be entitled, pursuant to § 53-2-613, MCA. The court noted that other statutes of limitation were argued by the parties, but offered no additional analysis given that the longest such period prevails when there is a "substantial question" as to which limitations period applies and all other possibilities involved shorter periods of time.

¶15 Observing that "[s]ome categorizing and separation must be done with the present members of the [C]lass in order for this case to proceed," the District Court instructed the Department to categorize the class members based on distinctions noted by the court, such as contested and uncontested cases. The court further instructed the Department to

6

compile data for each class member on the amount of actual medical expenses, other losses, the total amount of lien placed by the Department, and the amount actually collected by the Department. The court gave the Department six months to accomplish this task.

¶16 On March 18, 2009, the Department filed a motion to clarify and requested modification of the six-month time period given by the court. The court rejected the Department's request in a supplemental order dated April 27, 2009, and offered explanation as to the relevant distinctions between class members' claims. The court explained that whether a claim is "final" depends on whether the claim is "still actionable." The court ordered the Department to submit the following evidence for each class member whose claim it contended was "final": a final, non-appealable judgment on the claim; an executed full and final release on the claim; or, for any settlement (or accord and satisfaction) without a full release, evidence on which the Department relied to conclude that the claim was settled. For plaintiffs whose claims the Department did *not* contend were final, the court ordered the Department to submit a report containing the name of the recipient, the amount of the lien and amount collected, the total amount of the third party settlement, the total damages sustained with breakdown of such damages, costs and fees related to the settlement, and proportion of settlement that represented payment for medical expenses.

¶17 On May 26, 2009, the court entered an order ruling on motions for summary judgment and partial summary judgment. The court reiterated its conclusion that *Ahlborn* would be applied retroactively to members of the Class whose uncontested, non-settled

cases were not final as of February 14, 1998. It declined to address the "made whole" argument and constitutionality of the Montana statute, § 53-2-612, MCA, observing that the Alabama statute at issue in *Ahlborn* was essentially the same as the Montana statute, and *Ahlborn* was controlling on all points. Finding federal law dispositive, the court also declined to decide whether the action should be addressed as a subrogation issue. Lastly, the court rejected the Department's argument that no interest should be assessed until two years after the entry of a judgment, and held that interest would be assessed pursuant to § 31-1-206, MCA, from the date of collection on any amounts determined to be wrongfully collected.

¶18 The court buttressed this order several weeks later by granting plaintiffs summary judgment on their contention that the Department should be required to return all amounts collected from "first party" sources under § 53-2-612(3)(a)(i), MCA (2005) (the subsection, eliminated in the 2009 amendments, stated that the Department's liens applied to "all money paid by a third party or a third party's insurer"). The District Court concluded that any insurance coverage carried by Medicaid recipients was a "first-party" source, and thus recoveries from such sources were beyond the statute's reach.

¶19 On February 10, 2010, the court rejected plaintiffs' additional motion for partial summary judgment addressing their constitutional claims. On April 19, the court certified several orders as final pursuant to Rule 54(b), M. R. Civ. P., at the Department's request. The Department then filed this appeal, and the Class cross-appealed the denial of its motion on the application of the "made whole" doctrine. This Court heard oral argument on March 2, 2011.

**STANDARD OF REVIEW**

¶20     The retroactive applicability of *Ahlborn* and the applicability of the "made whole" doctrine are questions of law. *State v. Reichmand*, 2010 MT 228, ¶ 6, 358 Mont. 68, 243 P.3d 423; *State Compen. Ins. Fund v. McMillan*, 2001 MT 168, ¶ 5, 306 Mont. 155, 31 P.3d 347. We review questions of law de novo. *Reichmand*, ¶ 6; *In re Marriage of Strong*, 2000 MT 178, ¶ 11, 300 Mont. 331, 8 P.3d 763.

¶21     The District Court's rulings on allowable interest from the date of collection of excess amounts and the meaning of "third party" in the Medicaid lien context are matters of statutory interpretation. We review a district court's interpretation of a statute for correctness. *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 24, 358 Mont. 474, 247 P.3d 244.

¶22     Our standard of review of a district court order related to trial administration is whether the district court abused its discretion. *Eatinger v. Johnson*, 269 Mont. 99, 105, 887 P.2d 231, 235 (1994).

**DISCUSSION**

¶23     *1. Whether the District Court's retroactivity analysis was correct.*

¶24     The parties agree that *Ahlborn* applies retroactively to all cases open and pending on direct review at the time it was decided, under the clear direction of the U.S. Supreme Court. *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517 (1993) (federal rules "must be given full retroactive effect in all cases still open on direct review"); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S. Ct. 1745, 1748 (1995) (new rules must be applied to "all pending cases"); *Danforth v. Minn.*, 552 U.S.

9

264, 266, 128 S. Ct. 1029, 1032 (2008) ("all cases pending on direct review").  While some attention has been paid by the parties to Montana's own retroactivity jurisprudence, *Ahlborn's* retroactive effect is determined solely by federal retroactivity law, and our analysis therefore employs the federal framework.

¶25    The Department argues a Medicaid recipient's "case" is no longer pending or open on direct review once the lien is satisfied, as measured by the Department cashing the check and closing the file.  Therefore, contends the Department, only those class members whose liens were still active as of May 1, 2006, the date of the *Ahlborn* decision, are entitled to its retroactive application.  The Department asserts that the normal meaning of "case" as a judicial proceeding is inapposite in an administrative lien context, where a case file is closed as soon as the parties have fully performed and the lien is released.

¶26    The Class asserts that the Department's interpretation of "case" is self-serving and unsupported by any legal authority.  It points to unchallenged and long-standing federal case law interpreting "case" as the subject of a judicial proceeding.  *Osborn v. Bank of U.S.*, 22 U.S. 738 (1824); *Interstate Commerce Commn. v. Brimson*, 154 U.S. 447, 475-76, 14 S. Ct. 1125, 1132 (1894).  The Class argues the relevant "case" for purposes of retroactivity is simply the present one—*Blanton v. Dept. of Pub. Health & Human Servs.*—which was inarguably open and pending on direct review at the time *Ahlborn* was decided.  Thus, argues the Class, *all* class members are entitled to the retroactive application of *Ahlborn*.

¶27    The District Court ruled that *Ahlborn* would apply retroactively, but "at this time," only to class members with "uncontested, non-settled cases which were not final as of February 14, 1998." The court concluded that *Ahlborn* applied retroactively, but its ruling made plain that the Department could avoid the effect of *Ahlborn*'s application by raising affirmative defenses.

¶28    We conclude, first, that the Class is correct in asserting *Ahlborn* should apply retroactively to *all* class members, because the "case" here is the pending case at bar, not the administrative claims of individual class members. Second, we agree with the District Court's determination that affirmative defenses, such as the statute of limitations, may be asserted against individual class members' claims, but we conclude that a five-year statute of limitations is applicable, rather than the eight-year statute of limitations employed by the District Court. The Department must raise affirmative defenses with respect to individual class members to avoid *Ahlborn*'s application to the claims raised in this case.

¶29    Several affirmative defenses may be available to the Department. As the District Court observed, settlement agreements are generally respected as "final" and will not be disturbed by retroactive application of new rules of law. *E.g. Paopao*, 185 P.3d at 645. Likewise, as noted by the District Court, the Department may assert affirmative defenses to seek avoidance of *Ahlborn*'s application in the case of class members whose claims are subject to final, non-appealable judgments or executed full and final releases. It is through such affirmative defenses that an individual class member's "case" may be

excepted from the retroactive application of *Ahlborn*. The District Court's well-reasoned analysis of these defenses must be employed on a case-by-case basis on remand.

¶30 The Department also may raise the affirmative defense that particular claims are barred by the applicable statute of limitations. The District Court concluded that the eight-year limit applicable to instruments in writing was applicable to the present case. Section 27-2-202(1), MCA. The written instrument on which the court based this determination was the application for financial assistance that prospective Medicaid recipients must submit in accordance with § 53-2-613, MCA, which the Class characterizes as an "assignment" of rights to future "monetary and medical support."

¶31 We cannot agree with this determination. Section 27-2-202(1), MCA, is applicable to an action upon any "liability founded upon an instrument in writing." The liability here, however, is not founded upon the written application for assistance, because none of plaintiffs' claims was brought under provisions of the assignment. The lien on benefits arises by operation of law, as the application for benefits makes clear: "I understand that . . . [i]f approved for Medicaid, my rights to any health insurance or other third-party payment are *automatically assigned by law to the State of Montana*" (emphasis added). As Department's counsel explained during oral argument, federal Medicaid law allows states to assign rights to future payments via statute or via written assignment, and requires states electing an automatic statutory assignment to obtain a written acknowledgment from aid recipients that they are aware of the statutory scheme. 42 C.F.R. § 433.146(c) ("[i]f assignment of rights to benefits is automatic because of State law, the agency may substitute such an assignment for an individual executed

12

assignment, as long as the agency informs the individual of the terms and consequences of the State law."); *see generally Ex Parte S.C. Health & Human Servs.*, 614 S.E.2d 609, 610-11 (S.C. 2005) (explaining the scheme). Montana has elected to assign rights automatically by statute, and thus the Department's liens—and claims arising from those liens—are not based on the application for assistance, but rather on the statutory lien provision.

¶32 As our previous decisions make clear, § 27-2-202(1), MCA, is not implicated unless the claim arises from an alleged breach of a specific provision in the written instrument at issue. *Tin Cup Co. Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 26, 347 Mont. 468, 200 P.3d 60. We "look to the substance of the complaint to determine the nature of the action and which statute of limitation applies," and it is the "gravamen of the claim . . . [that] controls the limitations period to be applied." *Travelers Indem. Co. v. Andersen*, 1999 MT 201, ¶ 15, 295 Mont. 438, 983 P.2d 999; *Erickson v. Croft*, 233 Mont. 146, 153, 760 P.2d 706, 710 (1988). The omission of any mention of the application for assistance in the complaint, much less the breach of any specific provision, makes plain that the substance of plaintiffs' claims lies elsewhere.

¶33 We turn to an examination of other statutes of limitation. We are mindful, as was the District Court, that when there is substantial question as to which of several statutes should apply, the longest limitations period controls. *Thiel v. Taurus Drilling Ltd.*, 218 Mont. 201, 212, 710 P.2d 33, 40 (1985). There is certainly a substantial question here, as numerous statutes of limitation conceivably apply to aspects of the relief sought by plaintiffs: actions for the taking or recovery of personal property (two years, under § 27-

2-207(2), MCA); actions based on liabilities created by statute (two or five years, under §§ 27-2-211(1)(c) and (4), MCA); and actions upon obligations or liabilities not founded on an instrument in writing (three years, under § 27-2-202(3), MCA), for example. Plaintiffs seek declaratory and injunctive relief on a number of issues involving numerous areas of law. We conclude the substance of plaintiffs' claim is not squarely addressed by any of these statutes. Since no specific statute of limitations provides for the relief sought by plaintiffs, we hold the five-year limitations period in § 27-2-231, MCA, is applicable.

¶34    In light of this conclusion, causes of action accruing more than five years prior to February 14, 2006, when the complaint was filed, must fail as untimely. Although the Department identified the assertion of the lien as the moment the cause accrued, it is clear that the relief sought by the Class is to remedy *collection* pursuant to the lien, not the *imposition* of the lien. This is made plain by observing that if the Department were to have asserted a lien against an entire settlement but collected only that portion representing payment for medical expenses, no cause of action would arise. Thus, on remand, the District Court shall consider the cause of action to accrue on the date of collection on the lien.

¶35    We affirm the District Court's determination that *Ahlborn* is retroactive, reverse its determination that an eight-year limitations period is applicable, and direct the court to proceed consistently with this opinion in resolving individual class members' claims.

¶36    *2. Whether the District Court's order requiring the Department to compile data on each class member's claim constituted an abuse of discretion.*

¶37    After determining that *Ahlborn* would apply retroactively, and in response to the Department's motion to clarify, the District Court ordered the Department to prepare a report including the following data on cases it did not claim were final:

> A.    The names of the Medicaid recipients against whose settlement payments a lien was imposed and collected;
> B.    The amount of the lien and the amount [the Department] collected;
> C.    The total amount of the third party settlement if it can be ascertained;
> D.    The total amount of damages sustained by the class member, and a breakdown of those damage amounts;
> E.    The amount of the settlement which represented payment for medical expenses;
> F.    The costs and fees related to the settlement; and
> G.    The percentage relationship between the total damages amount and the portion of the total damages related to medical expenses.

The Department argues that the District Court's order is needlessly overbroad, and that *Ahlborn* requires only three pieces of information: the date of the third party check, the amount of the check, and the portion of third party proceeds that represents payment for medical costs.  The Class contends it was within the court's authority to fashion a remedy to implement its ruling, citing *Goodover v. Lindey's, Inc.*, 246 Mont. 80, 82-83, 802 P.2d 1258, 1260 (1990).

¶38    We are mindful that a district court is in the best position to determine the most fair and efficient procedure for conducting litigation in a class action context.  *Sieglock v. BNSF Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495.  The District Court is entrusted with authority to grant relief necessary or proper to implement a declaratory

15

judgment. Section 27-8-313, MCA. Furthermore, the trial court has "broad discretion" to "oversee the administration of trial." *State v. Grant*, 2011 MT 81, ¶ 11, 360 Mont. 127, __ P.3d __. An abuse of discretion occurs only when the trial court acts "arbitrarily without employment of conscientious judgment or exceeds the bounds of [reason] resulting in substantial injustice." *Billings High Sch. Dist. No. 2 v. Billings Gazette*, 2006 MT 329, ¶ 32, 335 Mont. 94, 149 P.3d 565. In exercising discretion, district courts may consider any factor that the parties offer or the court deems appropriate to consider. *Id.*

¶39 We agree with the Class that the District Court did not abuse its discretion in ordering the Department to compile the data in A-G above. We cannot conclude that any substantial injustice is present here and the District Court has authority to fashion a process for managing the litigation. The court considered the factors it deemed pertinent, and issued a reasoned order incorporating those factors. It is not this Court's place to substitute its judgment for that of the district court in exercising its discretion. *Id.* (citing *Gaustad v. City of Columbus*, 272 Mont. 486, 488, 901 P.2d 565, 567 (1995)). This is doubly true when the appeal is a limited one from a case still in its infancy at the trial court level, as is the appeal at bar. While the order calls for information the Department may not have in its possession, if the Department makes all reasonable efforts to comply with the District Court's order and finds itself unable to fully compile the requested data, it can bring this difficulty to the attention of the District Court for further consideration. The court likely will need to make adjustments to the order in light of our resolution of Issue 1 in any case. This is a matter firmly entrusted to the discretion of the trial court, and we leave its resolution in the District Court's hands.

¶40  *3. Whether the District Court erred in determining that interest should be assessed from the date of collection on any amounts improperly collected by the Department.*

¶41  The Department contends the District Court erred in assessing interest on amounts improperly collected.  The Department points to § 2-9-317, MCA, which provides that no interest shall be assessed against a governmental entity if the entity pays a judgment within two years after the day on which the judgment is entered.

¶42  The Class urges us to uphold the District Court's assessment of interest from the date of collection, pursuant to the legal rate of interest set out in § 31-1-106, MCA.  The Class distinguishes between "prejudgment" interest and interest assessed after a judgment has issued, and argues that § 2-9-317, MCA, does not apply to "prejudgment" interest.  It also argues that by virtue of the written assignment discussed above, interest is appropriate under § 18-1-404(1)(b), MCA, which assesses interest against the State on payments due under a contract.

¶43  We conclude the language in § 2-9-317, MCA, is unambiguous and permits no conclusion but the one advanced by the Department.  Section 18-1-404(1)(b), MCA, does not apply, as any payment from the State to plaintiffs would arise from a judgment against the State, not from any contractual obligation.  This conclusion is necessarily reached in light of our determination that the present suit involves no contractual claims brought under the written assignment.  Furthermore, the statute makes no mention of "prejudgment" or "postjudgment" interest, and our previous cases make clear the distinction is immaterial in this context.  *Leaseamerica Corp. v. State*, 191 Mont. 462,

17

468-69, 625 P.2d 68, 71 (1981); *Martel Constr. v. State*, 249 Mont. 507, 512, 817 P.2d 677, 680 (1991). In interpreting a statute, we do not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA; *State ex rel. Dept. of Envtl. Quality v. BNSF Ry. Co.*, 2010 MT 267, ¶ 52, 358 Mont. 368, 246 P.3d 1037.

¶44 We therefore conclude that no interest may be assessed against the State until two years after the date of entry of judgment. The District Court's conclusion that interest should be assessed under § 18-1-404(1)(b), MCA, is consistent with its determination that the Class's claims arose (at least in part) under the written assignment and were contractual in nature; but, as outlined earlier in this opinion, we cannot agree with that conclusion. We therefore reverse the District Court's assessment of interest as of the date of collection, and direct the court to apply the provisions of § 2-9-317, MCA, on remand.

¶45 *4. Whether the District Court erred in determining that a Medicaid recipient's insurer is not a "third party" as that term is used in state and federal Medicaid reimbursement law.*

¶46 The Class successfully moved for partial summary judgment that the Department should be required to return funds collected from "first-party" sources, such as a plaintiff's own private health or automobile insurance. The District Court cited *Billedeaux v. Mont. Dept. of Pub. Health & Human Servs.*, Lake Co. Cause No. DV 98-33 (Mont. Twentieth Jud. Dist. Ct. July 19, 1999), for its analysis of substantially the same question, wherein that court concluded that "first-party" source funds should be excluded from the sources of reimbursement available to the Department. The Class urges us to uphold the District Court's conclusion on this point.

18

¶47 The Department seeks to distinguish the Medicaid context from the understanding of "third party" and "first party" present in other areas of law. We agree with the Department that the interpretation of "third party" in the present case is controlled by clear statutory language erasing any and all distinctions between first and third parties recognized in other contexts. Section 53-2-612(6)(d), MCA,[1] defines "third party" as:

> [A]n individual, institution, corporation, or public or private agency that is or may be liable to pay all or part of the cost of medical treatment and medical-related services for personal injury, disease, illness, or disability of a recipient of medical assistance from the department or a county and includes but is not limited to insurers, health service organizations, and parties liable or who may be liable in tort.

The Montana statute is on all fours with the federal definition of "third party," contained in 42 C.F.R. § 433.136: "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan."

¶48 We have had occasion previously to consider the meaning of "third party" in the context of Montana's Medicaid statutes. *Glendive Med. Ctr. v. Mont. Dept. of Pub. Health & Human Servs.*, 2002 MT 131, 310 Mont. 156, 49 P.3d 560. In *Glendive*, the question was whether Veterans Administration (VA) benefits were a "third party" source under state and federal law. We reasoned,

> If [Glendive Medical Center (GMC)] did not offset the VA per diem payment on its Medicaid reimbursement claims forms, GMC would receive partial duplicate payment for medical services rendered to the same patient for the same disability, injury, disease or illness. This is precisely what the administrative rules are intended to prevent. Moreover, DPHHS's practice and policy treating the VA per diem payments as third-party liability

---

[1] This definition of "third party" was formerly contained in § 53-2-612(6)(c), MCA (2005). While the 2005 version of the statute supplies the applicable law to the present case, we refer to the current subsection of the statute for the sake of clarity.

payments "comports with the general principle that 'Medicaid is intended to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program.' " *Est. of Krueger v. Richland Co. Soc. Servs.*, 526 N.W.2d 456, 464 (N.D. 1994) (citing *N.Y. St. Dept. of Soc. Servs. v. Bowen*, 846 F.2d 129, 133 (2nd Cir. 1988)).

*Id.* at ¶ 27. Although the "third party" in that case was the Veterans Administration, rather than the hypothetical "first-party" private insurer, our reasoning in *Glendive* remains instructive.

¶49 Medicaid is designed to be the payer of last resort, available only when no other source is liable for the expense. Sen. Rpt. 99-146 at 313 (Oct. 2, 1985). Federal law provides:

> A State plan for medical assistance *must*— . . . take all reasonable measures to ascertain the legal liability of third parties (including health insurers, self-insured plans, group health plans . . . or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service) to pay for care and services under the plan . . . [and] seek reimbursement for such assistance to the extent of such legal liability.

42 U.S.C. §§ 1396a(a), (a)(25) (emphasis added). Montana's Medicaid enabling statutes were adopted, as required, within the framework of federal Medicaid law. The definition of "third party" in § 53-2-612(6)(d), MCA, therefore, arises out of the requirements federal law imposes on participating states. 42 U.S.C. § 1396a(a)(25). As in federal law, a recipient's own insurers are within the statutory definition of third party, as a "corporation . . . that is or may be liable to pay all or part of the cost of medical treatment . . . of a recipient of medical assistance from the department," and this group "includes . . . insurers." Section 53-2-612(6)(d), MCA.

20

¶50    As we recognized in *Glendive,* one of the federally-imposed requirements is to eliminate the possibility of duplicate payment for medical services, thereby maximizing Medicaid's effectiveness by recouping costs from all other available sources. Were a payment by a Medicaid recipient's own health or auto insurer to be classified as a "first-party" source beyond the reach of the Department, a recipient might receive duplicate payment for the same injury—once through the Medicaid program administered by the Department, and once through private insurance.

¶51    The distinction that the Medicaid recipient has paid for the privately-held coverage is immaterial in the Medicaid context, which distinguishes the present case from the two cases cited by the District Court:  *Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 628 P.2d 667 (1981), and *DeTienne Assocs. Ltd. Partn. v. Farmers Union Mut. Ins. Co.*, 266 Mont. 184, 879 P.2d 704 (1994).  Medicaid's ability to provide assistance to the greatest number of persons requires that whenever a person can afford private insurance, funds available from the person's insurer be used, *instead of* Medicaid funds.  Those able to provide insurance coverage for themselves will obtain a correspondingly lesser amount from the Medicaid program, a type of "sliding scale" present in nearly all public assistance programs targeted toward the neediest.

¶52    We therefore conclude the term "third party" is correctly interpreted to include all other sources of medical assistance available to Medicaid recipients, including private health insurance obtained by the Medicaid recipient or the recipient's own automobile insurance providing uninsured or underinsured motorist coverage.  Our analysis of "third party" is one of statutory construction, and must be confined to its statutory context.

21

While our analysis is of § 53-2-612, MCA (2005), we observe that amendments enacted since that time work no change to the correct interpretation of "third party" under the statutory scheme.

¶53 We reverse the District Court's grant of summary judgment to the Class on this point and direct the court to proceed in accordance with the above interpretation of "third party."

¶54 *Whether the District Court erred by failing to apply the common law "made whole" doctrine.*

¶55 On cross-appeal, the Class argues that the District Court erred in declining to address the "made whole" doctrine. The court held that the constitutionality of § 53-2-612, MCA, was not implicated, because *Ahlborn* conclusively resolved all relevant issues. As the court observed, "no-one will be completely 'made whole' " under *Ahlborn*. The Department "is entitled to reimbursement for medical payments made and the plaintiffs are entitled to a return of any excess monies" that do not represent payments for medical care. We are not at liberty to re-analyze the Department's entitlement to reimbursement or its limitation to amounts reflecting compensation for medical expenses. The District Court correctly determined that the "made whole" doctrine was not implicated given *Ahlborn*'s controlling mandate on this issue. We affirm the District Court's denial of plaintiffs' motion for partial summary judgment on this issue.

## CONCLUSION

¶56 In summary, we conclude *Ahlborn* applies retroactively to all class members' claims. The Department must raise affirmative defenses with respect to individual class

22

members to avoid *Ahlborn*'s effect. We determine the applicable statute of limitations to be § 27-2-231, MCA, which provides for a five-year limitations period. We decline to disturb the District Court's order requiring the Department to compile data on individual class members' claims. We reverse the District Court's determination as to interest assessed against the Department, and conclude that no interest may be assessed until two years after any judgment has been entered, under § 2-9-317, MCA. We conclude that the term "third party" in the Medicaid reimbursement statutes includes all other sources of medical assistance available to Medicaid recipients, including private health or automobile insurance obtained by the Medicaid recipient. We therefore reverse the District Court's grant of summary judgment to the Class on its proffered distinction between "first party" and "third party" sources. Lastly, we affirm the District Court's conclusion that plaintiffs' "made whole" claim is immaterial in light of *Ahlborn*.

¶57 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ JIM RICE