FILED

11/12/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0403

DA 23-0403

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 256

CITY OF HARDIN,

Plaintiff and Appellee,

v.

ANDRE ANTHONY,

Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Big Horn, Cause No. DC-2023-01
Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Tammy A. Hinderman, Appellate Defender Division Administrator,
Kathryn Grear Hutchison, Assistant Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Carrie Garber, Assistant
Attorney General, Helena, Montana

Jordan W. Knudsen, Hardin City Attorney, Hardin, Montana

Submitted on Briefs:  September 17, 2025

Decided:  November 12, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Andre James Anthony appeals his conviction of three misdemeanor charges of unlawful use of a computer by accountability. Anthony challenges the sufficiency of evidence to convict him on two charges and the trial court's refusal to permit his testimony by two-way video. We agree that the State presented sufficient evidence to convict but reverse and remand for a new trial on all charges. As a result, we do not address Anthony's challenge to his sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On September 8, 2022, Anthony entered a Family Dollar Store in Hardin, Montana, with two other men. Surveillance video shows Anthony wearing a black and blue long-sleeve shirt and the two other men wearing white t-shirts. Over the course of approximately ten minutes, one of the men in a white t-shirt appeared to swipe or insert a payment card several times at the computerized cash register. Then while one of the others distracted the store attendant, the man appearing to swipe his card reached over and pressed a "cash received" button on the attendant's side of the register. In doing so, the register indicated three complete transactions although the men did not provide actual payment.

¶3 Copies of the transactions matching the time on the video surveillance suggest that the men left the Family Dollar Store without paying for three gift cards and a bottle of body wash, totaling $1,512.35. Officers detained the three men in Columbus, Montana. In the men's vehicle, law enforcement found a bottle of body wash and three original receipts from the Hardin Family Dollar Store that matched printed copies of the transactions. Law enforcement showed the men's driver's license photographs to the store attendant. The

2

attendant misidentified Anthony as the man who had reached around the register to press the "cash received" button. Anthony was arrested and remained in custody. The other two men were released that same day and never charged.

¶4 Law enforcement initially cited Anthony with three counts of shoplifting under Hardin City Ordinance § 6-1-16. The City Court set bail in the amount of $800 for each count and imposed the conditions that Anthony not leave the State of Montana without court permission, make all court appearances, and personally appear for his omnibus hearing on November 2, 2022, and a bench trial scheduled for December 8, 2022.

¶5 Once the prosecution discovered that Anthony was not the man in the white t-shirt, it amended the charges from shoplifting to unlawful use of a computer by accountability. Sections 45-6-311(1)(b), 45-3-302(3), MCA (2021). Anthony posted bail on September 16. On this day, Anthony also filed motions to amend his release conditions to allow him to leave Montana and to appear at his arraignment by two-way electronic audio-video communication ("video"). The record reflects no ruling on this motion. At the omnibus hearing on November 2, defense counsel stated that Anthony had left Montana and returned to his family in Michigan.

¶6 On November 15, Anthony filed a motion to dismiss for lack of probable cause. At the beginning of the December 2 evidentiary hearing on the motion, the parties stipulated that Anthony could appear at the hearing by video. After the City Court denied Anthony's motion to dismiss, the court sought assurance from Anthony that he knew he had to be at trial the following week. Anthony responded, "Yes, your Honor."

3

¶7     On December 7, Anthony moved to appear by video to enter a change of plea, which the City Court summarily denied.[1]  Anthony did not appear in court the following day.  The prosecution and defense had been working toward a plea agreement that would have required Anthony to speak with law enforcement.  The prosecution objected to Anthony's video appearance for his change of plea, noting that the agreement required Anthony's presence in person.  Without a viable plea agreement, defense counsel requested that Anthony appear by video for trial.  The prosecution did not object to that request.  The City Court agreed, and counsel connected Anthony by Zoom.  Once the prosecution rested, defense counsel asked the court to allow Anthony to testify by video if he wished.  The prosecution objected.  The court denied Anthony's request.

¶8     The City Court issued its Findings of Fact, Conclusions of Law and Judgment, finding Anthony guilty on all three counts of unlawful use of a computer by accountability. The court sentenced Anthony on January 4, 2023.  Anthony appealed to the District Court. The District Court concluded that there was sufficient evidence to find Anthony guilty beyond a reasonable doubt on all counts.  It also determined that Anthony waived his right to testify by his failure to appear and that the City Court did not commit reversible error. The District Court affirmed Anthony's conviction and sentence.

---

[1] The Findings of Fact, Conclusions of Law and Judgment notes that the original judge was urgently hospitalized the night before trial and a different judge presided over trial on December 8, 2022.

**STANDARD OF REVIEW**

¶9     When a criminal case is "on appeal from a justice court of record, a district court functions as an intermediate appellate court and is confined to review of the record and questions of law." Sections 3-5-303, 3-11-110, MCA; *State v. Cole*, 2025 MT 18, ¶ 4, 420 Mont. 231, 562 P.3d 1065 (citations omitted). Our review is "as if the appeal had originally been filed in this Court, independent of the District Court's decision." *Cole*, ¶ 4 (citations omitted).

**DISCUSSION**

*1. Did the prosecution present sufficient evidence to establish unlawful use of a computer by accountability for all counts against Anthony?*

¶10    We "revie[w] de novo whether sufficient evidence supports a conviction." *State v. Stillsmoking*, 2020 MT 154, ¶ 9, 400 Mont. 256, 470 P.3d 183. The evidence is sufficient if, "upon viewing evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Boyd*, 2021 MT 323, ¶ 12, 407 Mont. 1, 501 P.3d 409.

¶11    A person unlawfully uses a computer if "the person knowingly or purposely and without authorization . . . obtains the use or access of any computer, computer system, or computer network without consent of the owner." Section 45-6-311(1)(b), MCA. A person may be held accountable for the crime if, "either before or during the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the offense." Section 45-2-302(3), MCA.

5

¶12    "Mere presence at the scene of the crime, without interfering," or "mere concealment of knowledge that a crime is about to be committed" are insufficient to support a conviction by accountability.  *State v. Maetche*, 2008 MT 184, ¶ 17, 343 Mont. 464, 185 P.3d 980 (quotation omitted); *State v. Johnston*, 267 Mont. 474, 481, 885 P.2d 402, 406 (1994).  A true accomplice is "one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime." *Johnston*, 267 Mont. at 481, 885 P.2d at 406 (quotation omitted).

¶13    Anthony argues that the prosecution presented insufficient evidence that he was a knowing, voluntary participant in the commission of the first and third fraudulent transactions.  The State counters that the second transaction, for which Anthony does not dispute the sufficiency of evidence, is "inextricably linked" to the two other offenses.

¶14    "Circumstantial evidence alone is sufficient to obtain a conviction."  *State v. Southern*, 1999 MT 94, ¶ 92, 294 Mont. 225, 980 P.2d 3 (citation omitted).  Circumstantial evidence "tends to establish a fact by proving another and . . . , though true, does not itself conclusively establish that fact but affords an inference or presumption of its existence." Section 26-1-102, MCA.  It "must only be of such a quality and quantity as to legally justify a [factfinder] in determining guilt beyond a reasonable doubt, and all facts and circumstances must be considered collectively." *Southern*, ¶ 92 (citation omitted).

¶15    Participation in another, discrete crime related to a separate crime charged by accountability may serve as circumstantial evidence. *Maetche*, ¶ 24.  For example, in *State v. Maetche*, the State charged the defendant with theft of a washer and dryer and with

criminal mischief by accountability for the destruction of a rental property that the defendant recently had vacated. *Maetche*, ¶¶ 2-4. Maetche argued that her mere presence at the property during the two-week period during which the damage had occurred was insufficient to prove that she was an active participant in the property's destruction. *Maetche*, ¶ 15. At trial, eyewitnesses testified that they saw the defendant removing the washer and dryer from the residence during the span of time the destruction occurred. *Maetche*, ¶ 6. Maetche contended that, because nothing showed her involvement in damaging the property, "the prosecution failed to establish that, either before or during the damage, she solicited, aided, abetted, agreed or attempted to aid a member of her family in committing the damage to the mobile home." *Maetche*, ¶ 7. Although the theft was a separate offense and the State did not present direct evidence that the defendant affirmatively engaged in destroying the property, this Court concluded that Maetche's participation in theft of the washer and dryer "was clearly a circumstantial basis upon which a trier of fact could determine [the defendant] was involved . . . ." *Maetche*, ¶¶ 6, 24.

¶16   Here, Anthony and two other men entered and left Hardin's Family Dollar Store together. Anthony stood within feet of a man who was pressing a "cash received" button on a computerized cash register without the store attendant's consent. When another customer came in, Anthony walked around the store and returned to the register with the same man. Although Anthony primarily stood passively nearby and looked down at his phone, he never left the other man's side throughout the roughly ten minutes it took to

7

complete the three transactions. He can be seen in surveillance video observing intently as the man in a white t-shirt presses the "cash received" button on the register's screen. Anthony also pointed alongside the other men at items behind the counter to distract the store attendant. Law enforcement detained the men traveling together in Columbus, Montana, and found receipts from the fraudulent transaction in their vehicle.

¶17 Anthony does not contest the sufficiency of evidence that he was an accomplice for the second transaction. The video shows Anthony pointing behind the counter to distract the store attendant as another man pressed the "cash received" button. Viewing the trial evidence favorably to the prosecution, we find it sufficient to prove his role as an accomplice to the first and third transactions, all of which were conducted within a matter of minutes. A factfinder reasonably could infer that three men entering the store together, standing and walking around together, and traveling in the same vehicle together were acting in concert. The factfinder also could infer that because Anthony took affirmative action to distract the store attendant while the three stood together near the register, he was a knowing and voluntary participant throughout the men's time in the store. Whether he was actively engaged in distracting the store attendant throughout each transaction, a factfinder logically could infer that Anthony, standing nearby, was ready to distract or overwhelm the clerk when necessary to aid the men in the unlawful use of a computer.

¶18 The Defendant's argument on appeal, which Justice McKinnon's Dissent accepts, is that the evidence presented "merely shows association, not accountability." To be held accountable for an offense, however, "the accused need not take an active part in any overt

8

criminal acts to be adjudged criminally liable for the acts." *State v. Lantis*, 1998 MT 172, ¶ 39, 289 Mont. 480, 962 P.2d 1169 (quotation omitted). An "accused[']s act of aiding or abetting under the accountability statute need not be criminal in nature; it need only promote or facilitate commission of the crime." *Lantis*, ¶ 39. *See also State v. Bradford*, 210 Mont. 130, 142, 683 P.2d 924, 930 (1984). The plain language of § 45-2-302, MCA, provides that a defendant may be held accountable for the criminal acts of another person if "either *before* or *during* the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees or attempts to aid the other person in the *planning* or *commission of the offense*." Section 45-2-302(3), MCA, (emphases added). Similar to Maetche's participation in the theft, Anthony's affirmative action of providing a distraction during the second transaction supports an inference that he was involved in the "planning or commission" of the offenses. The video surveillance, which the factfinder viewed, substantiates the City's allegations. Taken together, the circumstantial evidence supports a finding that the three men were acting together, satisfying the accountability statute even if Anthony did not act overtly during each transaction.

¶19 Although the City charged the second transaction as a separate offense, it creates a circumstantial basis upon which a trier of fact could determine that Anthony was involved in the commission of all three fraudulent transactions and not "merely present" at the scene. Weighing both direct and circumstantial evidence in the light most favorable to the City,

we conclude that a reasonable trier of fact could have found beyond a reasonable doubt that Anthony was accountable for all three counts of the unlawful use of a computer.[2]

*2. Did the trial court abuse its discretion when it allowed Anthony to appear by video for trial but later denied his request to give testimony?*

¶20    A trial court has broad discretion to "oversee the administration of a trial." *Blanton v. Dep't of Pub. Health & Human Servs.*, 2011 MT 110, ¶ 38, 360 Mont. 396, 255 P.3d 1229 (quotation and citation omitted).  We review a trial court's discretionary rulings for abuse of discretion.  *City of Kalispell v. Salsgiver*, 2019 MT 126, ¶ 11, 396 Mont. 57, 443 P.3d 504.  A trial court abuses its discretion when "it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of [reason] resulting in substantial injustice." *Blanton*, ¶ 38 (quotation and citation omitted).

¶21    "In all cases in which the defendant is charged with a misdemeanor offense, the defendant may appear by counsel only, although the court may require the personal attendance of the defendant at any time."  Section 46-16-120, MCA.  In misdemeanor cases, "if the defendant fails to appear in person, either at the time set for the trial or at any time during the course of the trial and if the defendant's counsel is authorized to act on the

---

[2] Justice McKinnon's Dissent and Anthony take issue with the fact that the prosecution did not consolidate the charge as one count of theft by common scheme.  Dissent, ¶ 38.  But "[w]here the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." *State v. Cameron*, 2005 MT 32, ¶ 17, 326 Mont. 51, 106 P.3d 1189 (quotation and citation omitted).  Anthony highlights the prosecution's reference to a "common scheme" at trial in attempt to cast doubt on the sufficiency of evidence but does not develop this point beyond mere conjecture.  As is evident in the Findings of Fact, Conclusions of Law, and Judgment, the trial judge relied on the theory of accountability to review the facts and reach its conclusion that Anthony was guilty by accountability for the unlawful use of a computer.

defendant's behalf, the court shall proceed with the trial unless good cause for continuance exists." Section 46-16-122(1), MCA.

¶22 The City Court ordered as a condition of Anthony's release on bail that he "personally appear for the omnibus hearing and trial" and that he remain in Montana unless the court approved his departure. At the omnibus hearing on November 2, Anthony's defense counsel requested that the court allow Anthony to make his appearance by video, explaining that Anthony had returned to Michigan and could not afford to return to Montana for the hearing. The court did not address Anthony's request to make his appearance by video, directed forfeiture of bond, and issued a bench warrant with a bond amount of $5,000. When the City Court held a hearing on Anthony's subsequent motion to dismiss, the court confirmed and the parties agreed that Anthony could appear at the hearing by video. After the court denied the motion from the bench, it asked Anthony if he planned to attend the bench trial the following Thursday, stating, "[Y]ou know you have to be here?" Anthony responded, "Yes, your Honor."

¶23 On December 7, the day before trial, Anthony moved to appear by video for a change of plea hearing, which the City Court denied. The following day at trial, Anthony did not appear. Defense counsel acknowledged that a stipulation of his plea agreement was that Anthony appear for the plea in person but explained that Anthony could not afford to travel from Michigan to Montana. Defense counsel then asked if Anthony could participate in his trial by video. When the court inquired about the City's position, the prosecution responded, "Certainly, I am not going to step in the way of him wanting to

11

participate . . . by video. I think everybody should have every opportunity they can to defend themselves in court . . . . [I]f he wants to log on, that's fine for the trial." The prosecution clarified that the State was still "not okay with [Anthony] participating . . . by video" for any change of plea because part of their agreement was that Anthony be there in person to speak with law enforcement.

¶24 The court asked if the parties were ready to proceed to trial. Anthony's defense counsel responded that if the court wanted to hear from Anthony about his inability to pay for a plane ticket, he was available for questioning by video. The City Court then ruled:

> Well, I would prefer the video. Okay. We'll proceed to trial. He can certainly make his appearance by video. Because, well, the plea agreement has been, which was the subject of this, okay. Well, the plea agreement, I can understand that if the terms and conditions were such that Judge Seykora denied it, I would continue that denial and specifically now that the City has withdrawn [its agreement to] that plea.[3] Because he's non-appearance. Then, let us proceed to trial now. How much time are you going to need to get him online here?

Defense counsel logged into Zoom, allowing Anthony to attend by video. The court inquired, "[A]re you appearing by video?" Anthony responded, "Yes, your Honor." The court then confirmed, "So, Mr. Anthony, you knew that you had the ability, or the right to appear here today, is that correct?" Anthony answered, "[Y]es, your Honor." The court asked Anthony if he was satisfied with going to trial, to which Anthony replied, "Yes, your Honor." The court continued, "It's a little unorthodox, but we will proceed with trial."

---

3 Section 46-17-203(3), MCA, permits a misdemeanor defendant to enter a guilty plea "through the use of two-way electronic audio-video communication . . . if neither party objects and the court agrees to its use."

¶25 The prosecution presented its case, then rested. Defense counsel asked if Anthony could testify by video if he wished. The prosecution objected. The Court stated, "I'm not going to allow him to testify by video. I'll allow him to watch, but I'm not gonna [sic] allow him to testify by video." The defense counsel responded, "[W]e would make that motion if he has, just because he . . . has the right to participate in his defense." The court denied Anthony's motion without further explanation.

¶26 If the City Court considered Anthony's video appearance a non-appearance, Montana law allowed the court to proceed with trial in absentia unless Anthony's defense counsel showed good cause for a continuance. Section 46-16-122(1), MCA; *City of Missoula v. Cox*, 2008 MT 364, ¶ 14, 346 Mont. 422, 196 P.3d 452. The conditions of Anthony's bail ordered him to appear in person at trial and prohibited him from leaving Montana without the court's approval. The court had required Anthony's personal presence and was within its authority to proceed with trial in absentia.

¶27 But when the court agreed that Anthony could "appear by video," it did not qualify that statement or indicate that it nonetheless considered the trial to be in absentia. Nor did the prosecution's consent to Anthony's video "participat[ion]" suggest anything but "the opportunity" that every person has to "defend themselves in court." The court acknowledged that it was "unorthodox" but *granted* Anthony's request. If the court meant that it intended to proceed with trial in absentia and exclude Anthony from actively participating or testifying, it should have made that clear. Failing to do so prevented defense counsel from seeking a continuance as § 46-16-122(1), MCA, allows and

13

reasonably led the defense to believe Anthony was not limited to simply being an observer. Under the circumstances of this case, we conclude that the City Court abused its discretion in refusing to allow Anthony to testify only after the prosecution had rested its case. *See Vancos v. State*, 2024 MT 30, ¶ 25, 415 Mont. 187, 543 P.3d 605 (finding prejudicial error on evidentiary ruling when trial court "changed its mind only after [the plaintiff] had rested his case").

## CONCLUSION

¶28 For the foregoing reasons, Anthony's convictions are reversed and the case is remanded for a new trial on all counts.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA

Justice Jim Rice, concurring and dissenting.

29 I concur with the Court's determination that there was sufficient evidence to support the Defendant's conviction. I dissent from the Court's reversal on the trial absentia issue.

30 The Justice Court advised the Defendant throughout the proceedings that he was required to appear in person, and, specifically, that he appear in person for trial. The Defendant even acknowledged that he understood that his appearance was required for trial. His failure to appear at pretrial proceedings led to issuance of three bench warrants for his arrest and an order forfeiting his bond. He requested to appear by video to be

14

arraigned on the amended charges and address the bench warrant, but the Justice Court denied the motion. He requested to appear by video at the omnibus hearing, but the Justice Court denied this motion. The Justice Court permitted him to appear by video at the evidentiary hearing on the motion to dismiss, where the Justice Court was unequivocally clear about what would be required at trial:

> JUDGE: It's set for trial next Thursday at nine o'clock. Um, anything I need to know before trial next week?
>
> PROSECUTOR: No, nothing from the City, Your Honor.
>
> JUDGE: *Mr. Anthony, you gonna be here, you know you have to be here?*
>
> MR. ANTHONY: *Yes, Your Honor*.
>
> JUDGE: All right, see you all next week. Thank you.
>
> DEFENSE COUNSEL: Thank you, Judge.

(Emphasis added.)

31      There was simply no question that Anthony was required to appear in person at trial, but, nonetheless, he was again a no-show. "In a misdemeanor case, if the defendant fails to appear *in person*, either at the time set for trial or at any time during the course of the trial and if the defendant's counsel is authorized to act on the defendant's behalf, the court shall proceed with the trial unless good cause for continuance exists." Section 46-16-122(1), MCA (emphasis added).1

---

1 No argument is made here that Anthony's counsel was not "authorized to act on the defendant's behalf." Section 46-16-122(1), MCA. However, if counsel is not so authorized, the court may nonetheless "proceed with the trial after finding that the defendant had knowledge of the trial date and is voluntarily absent." Section 46-16-122(2)(d), MCA.

Thus, according to statute, the Justice Court properly proceeded to conduct the trial in Anthony's absence. After the City rested its case, the following conversation occurred:

> DEFENSE COUNSEL: Um, yes, your honor. I guess, so, my client's appearing by video, I guess, I mean there's a possibility he could testify that would be, one, up to him if he wants to testify at this point and then, two if the court would allow him to testify by video.
>
> JUDGE: Do you have any objection [inaudible]?
>
> PROSECUTOR: I do object to that, your honor.
>
> JUDGE: All right. I'd thought you probably would. Um, *I'm not going to allow him to testify by video, I'll allow him to watch, but I'm not gonna allow him to testify by video*.
>
> DEFENSE COUNSEL: Ok, your honor. Um. Well, *we would make that motion* if he has, just because he, he has the right to participate in his defense, and I mean again your honor he doesn't have the money to, to travel here.
>
> JUDGE: I understand. *But I'm still going to deny your motion*.
>
> DEFENSE COUNSEL: Ok. Um, I don't have any additional witnesses, your Honor.

(Emphasis added.)

As this demonstrates, the defense did not even request that Anthony be able to *testify* by video until after the City had rested, and that request was clearly denied, consistent with the Justice Court's prior rulings. The Opinion cites the pretrial conversation where the Justice Court said Anthony could "make his appearance" at trial by video, Opinion ¶ 24, but this neither expressly overruled the Justice Court's clear prior rulings requiring his in-person attendance, nor did do so impliedly, as the issue of Anthony *testifying* did not arise until mid-trial, at which point Defense Counsel made that specific motion, the City

objected, and the Justice Court flatly denied the request. The Justice Court at that point clarified that its earlier order was limited to allowing Anthony "to watch" the trial.

34 More importantly, criminal procedure is governed by statute. Section 46-1-103, MCA ("This title governs the practice and procedure in all criminal proceedings in the courts of Montana . . . ."); *cf. State v. Brendal*, 2009 MT 236, ¶ 11, 351 Mont. 395, 213 P.3d 448 ("In Montana, criminal sentencing alternatives are strictly a matter of statute. Our standard of review, therefore, includes the question of whether the district court correctly applied the applicable statutes." (internal citations omitted)). The Justice Court was not statutorily authorized to grant leave for Anthony to appear for trial by video. As the State notes, the criminal procedure statutes authorize only two instances where a defendant may electronically appear: arraignment and for entry of a guilty or no contest plea. *See* §§ 46-12-201, 46-16-105, 46-17-203, MCA. As explained above, the Legislature makes it clear that "[i]n a misdemeanor case, if the defendant fails to appear *in person* . . . the court shall proceed with the trial." Section 46-16-122(1), MCA (emphasis added). Anthony knew he had to be present at trial in person. The court extended some grace to Anthony to watch the trial, probably because it made no difference to the proceeding whether or not he watched. Yet, such grace cannot include Anthony's participation in trial as though he were present—no statue authorizes a trial court the authority to hold a trial in absentia or permit the defendant to appear electronically in a misdemeanor case, or, here, to do both simultaneously.

17

While a prosecution witness may appear via video, it does not follow that a defendant may also appear in his or her trial via video. *See City of Missoula v. Duane*, 2015 MT 232, ¶ 21, 380 Mont. 290, 355 P.3d 729 (due to cost and other circumstances, the district court permitted a prosecution witness to testify via Skype. "Allowing Skype testimony under these circumstances was not error because all of the hallmarks of confrontation . . . were fully met."). Regardless of how the Court interprets the conversations between the parties and the Justice Court that led to the situation where Anthony was on Zoom for his own trial, Opinion ¶¶ 24–25, the Justice Court had no statutory authority to permit as such. There is no statute authorizing a defendant's appearance at his or her own trial through electronic means. Section 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted or to omit what has been inserted*." (emphasis added)); *see State v. Brummer*, 1998 MT 11, ¶¶ 45–47, 287 Mont. 168, 953 P.2d 250 (explaining that all aspects of a statute are to be given effect until changed by the Legislature).

I concur and dissent accordingly.


/S/ JIM RICE


Justice Laurie McKinnon, dissenting.

¶37 I agree that this matter should be reversed and remanded for a new trial because the court abused its discretion when it allowed Anthony to appear by video but then prevented

him from testifying and participating in his trial. However, I disagree that it should be remanded on all counts as, in my opinion, retrial on Counts I and III is barred because the State failed to present evidence from which a rational trier of fact could find Anthony accountable on those two counts beyond a reasonable doubt.

¶38 This case was prosecuted as if the charges were misuse of a computer by common scheme, which under the statutory definition of common scheme could not be done. Indeed, the original charges were three counts of theft which could have been consolidated to one count of theft by common scheme. If common scheme or even a conspiracy had been charged, then I would agree with the Court that there was sufficient evidence to charge Anthony with all three transactions. But the City chose to charge three separate counts of misuse of a computer and, in doing so, it must prove that Anthony misused the computer during each transaction or was accountable for the misuse. Common scheme, which requires "a common purpose or plan that results in the repeated commission of the same offense" is a different standard than accountability, which requires that the State have sufficient evidence to prove Anthony "solicits, aids, abets, agrees, or attempts to aid" in the commission of the offense. *Compare* § 45-2-101(8), MCA, *with* § 45-2-302(3), MCA. The Court analyzes this improperly through the lens of a common scheme. The State's own witness, Officer Smells, testified that Anthony did not distract the clerk during the first and third transaction and was merely standing by looking at his phone during these transactions. The first transaction was carried out entirely by "the man in the white t-shirt" while Anthony was just standing there. During the third transaction, Officer Smells

19

confirms that Anthony was standing back, uninvolved, and looking at his phone. For Counts I and III, the City argued Anthony was guilty because he was part of a "scheme" even though he had been charged with three separate offenses and a person cannot be guilty of a "scheme" unless charged with a common scheme.

¶39 "Mere presence at the scene of a crime, even with knowledge and approval of the criminal intent or acts of others, is not a crime and is insufficient alone to establish criminal accountability for a crime committed by others." *State v. Pierre*, 2020 MT 160, ¶ 22, 400 Mont. 283, 466 P.3d 494. Specifically, accountability pursuant to § 45-2-302(3), MCA, presupposes a voluntary act or an omission where the law imposes a duty. Section 45-2-202, MCA. On this record, the State failed to identify a voluntary act by Anthony contemporaneous with the first or third transaction, and points to no legal duty he failed to perform. Mere proximity, awareness, or passive observation cannot satisfy § 45-2-202, MCA. Here, the City elected to charge three discrete offenses, not theft by common scheme. That election required the State to prove Anthony "solicit[ed], aid[ed], abet[ted], agree[d], or attempt[ed] to aid" during each misuse, § 45-2-302(3), MCA. Proving he was a member of a generalized effort was not enough. The Court relies upon *Maetche*, but that case does not save Counts I and III. In *Maetche*, contemporaneous, affirmative conduct (removing property during the destructive act underlying the charged offense) supplied the inference of participation. *Maetche*, ¶ 24. However, the inference here rests on association and posture alone, not on conduct that "promote[s] or facilitate[s]" the first or third misuse. Even when viewed most favorably to the prosecution, "mere presence" and silent approval

20

cannot satisfy § 45-2-302(3), MCA. *Pierre*, ¶ 22. The City argued that Anthony was accountable because he stretched his hands above his head—the "felony stretch"—just before the man in the white t-shirt committed the first misuse and, for the third misuse, Anthony's eyes seemed to be looking on as the "other man" committed the offense. While this may have met the burden if common scheme had been applicable, it is insufficient to prove legal accountability. The statute requires proof that the defendant did something to promote or facilitate the charged offense, something the State failed to prove for Counts I and III. I dissent from the Court's decision to hold otherwise.

/S/ LAURIE McKINNON

Justices Ingrid Gustafson and Katherine Bidegaray join in the dissenting Opinion of Justice Laurie McKinnon.

/S/ INGRID GUSTAFSON
/S/ KATHERINE M. BIDEGARAY

21